UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDOLFO ROMERO-CICLE,           )
                                 )
        Plaintiff,               )
                                 )
        v.                       )     Civil Action No. 05-2303 (RJL)
                                 )
U.S. DEPARTMENT OF JUSTICE,      )
                                 )
        Defendant.               )
                                 )

<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, by its undersigned attorneys, hereby moves the

Court, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, for an Order granting summary judgment on the grounds

that no genuine issue of material fact exists and that defendant

is entitled to judgment as a matter of law.[1]  In support of this

---

[1] Plaintiff should take notice that any factual assertions
contained in the declarations submitted in support of this motion
will be accepted by the Court as true unless the plaintiff
submits his own affidavit or other documentary evidence contra-
dicting those assertions.  <u>See</u> <u>Neal v. Kelly</u>, 963 F.2d 453, 456-
57 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); L. Cv. R. 7(h).  Rule
56(e) of the Federal Rules of Civil Procedure provides:

> Supporting and opposing affidavits shall be made on
> personal knowledge, shall set forth such facts as would
> be admissible in evidence, and shall show affirmatively
> that the affiant is competent to testify to the matters
> stated therein.  Sworn or certified copies of all pa-
> pers or parts thereof referred to in an affidavit shall
> be attached thereto or served therewith.  The court may
> permit affidavits to be supplemented or opposed by
> depositions, answers to interrogatories, or further
> affidavits.  When a motion for summary judgment is made
> and supported as provided in this rule, an adverse
> party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts

(continued...)

-2-

motion, the Court is respectfully referred to the Declaration of Karen Summers, Paralegal Specialist, South Central Regional Office of the Federal Bureau of Prisons, United States Department of Justice; to defendant's Statement of Material Facts as to Which There Is No Genuine Issue; and to the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, all of which are filed herewith.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


Dated:  June 1, 2006
_____
JENNIFER H. ASHWORTH
(DC Bar #475261)
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue, NW
Suite 11050
Washington, DC  20530-0001
(202) 616-5478

_____

(...continued)
     showing that there is a genuine issue for trial.  If
     the adverse party does not so respond, summary
     judgment, if appropriate, shall be entered against the
     adverse party.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDOLFO ROMERO-CICLE,                )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )    Civil Action No. 05-2303 (RJL)
                                      )
U.S. DEPARTMENT OF JUSTICE,           )
                                      )
        Defendant.                    )
_____)

STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS NO GENUINE ISSUE, PURSUANT TO LOCAL RULE 7(h)

Pursuant to Local Rule 7(h), defendant submits the following statement of material facts as to which there is no genuine issue:

1.  By letter dated January 19, 2005, plaintiff submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003), and the Privacy Act of 1974, 5 U.S.C. § 552a (2000), to the Federal Bureau of Prisons (BOP), for all records concerning himself.  (See Declaration of Karen Summers, Paralegal Specialist, South Central Regional Office (SCRO) of BOP, United States Department of Justice [hereinafter Summers Declaration], filed herewith, ¶ 4 & Exhibit 1.)

2.  By letter dated February 2, 2005, to plaintiff, who is a federal inmate incarcerated at the Federal Correctional Facility in Forrest City, Arkansas (FCI Forrest City), BOP acknowledged receipt of plaintiff's request, assigned it request number 2005-02497, and advised plaintiff that it was interpreting his request

-2-

as one for "a copy of documents maintained in the central and
medical files pertaining to [him]." (Id. ¶ 5 & Ex. 2.)  In
accordance with BOP Program Statement No. 1351.05, entitled
"Release of Information," BOP then advised plaintiff to request
local review of the releasable portions of his central and
medical files from FCI Forrest City. (Id.)  Within that same
letter, BOP then informed plaintiff that in response to his
FOIA/Privacy Act request it would request a copy of the "FOI
Exempt" section of his central file from FCI Forrest City for
review and a disclosure determination by BOP's SCRO. (Id.)  A
copy of BOP's letter was sent to Linda Sanders, Warden, FCI
Forrest City, with a notation advising that plaintiff should be
provided with access to his central and medical files. (Id.)

       3.  By electronic mail (e-mail) dated February 2, 2005, to
Lisa JamesYoung, Staff Attorney, FCI Forrest City, from Larry
Collins, Legal Instruments Examiner, SCRO, BOP requested a copy
of the "FOI Exempt" portion of plaintiff's central file. (See
id. ¶ 6 & Ex. 3.)

       4.  FCI Forrest City staff members then conducted a search
of the Inmate Central Record System (Justice/BOP-005) using
plaintiff's name as a search identifier (i.e., "Randolfo Romero-
Cicle") and located plaintiff's Central File which is the
"central repository" for an individual inmate's records. (See
id. ¶ 12 & n.6.)

-3-

5.  FCI Forrest City located twenty-nine pages of responsive records in the "FOI Exempt" portion of plaintiff's central file, and on February 15, 2005, it forwarded those records to BOP's SCRO for processing under the FOIA and the Privacy Act.  (See id. ¶¶ 6, 12 & Ex. 3.)

6.  By letter dated February 23, 2005, BOP advised plaintiff that twenty-nine pages of responsive records were located in the "FOI Exempt" portion of his central file, and of those twenty-nine pages, BOP released to plaintiff six pages in full, released seventeen pages in part, and withheld six pages in full pursuant to Exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2), and Exemptions 2, 7(C), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(2), (b)(7)(C), and (b)(7)(F).  (See id. ¶¶ 7-8, 12 & Ex. 4.)  BOP advised plaintiff of his right to administratively appeal to the Office of Information and Privacy (OIP) from its action on his request.  (See id. ¶ 10 & Ex. 4.)  BOP also reminded plaintiff to submit a request to FCI Forrest City staff members for local review of the releasable records in his central and medical files.  (See id. ¶ 7 & Ex. 4.)

7.  By letter dated March 24, 2005, to OIP, plaintiff appealed BOP's action on his request.  (See id. ¶ 11 & Ex. 6.) Before OIP could respond to his administrative appeal, plaintiff filed his Complaint for judicial review of BOP's action on his initial request.  (See Pl.'s Compl.; Summers Decl. ¶ 11.)

-4-

8.  Subsequent to the initiation of this action, BOP again reviewed the records responsive to plaintiff's request.  (See id. ¶ 9.)  As a result of this review, by letter dated May 12, 2006, BOP disclosed to plaintiff additional portions of four pages that were previously withheld from him.  (See id. ¶¶ 7-9 & Exs. 4-5.) Thus, in response to plaintiff's request, BOP has now disclosed seven pages in full, disclosed sixteen pages in part, and withheld six pages in full under the FOIA and the Privacy Act. (Id.)

9.  The records requested by plaintiff relating to himself were found by BOP in the "FOI Exempt" section of plaintiff's central file, located at FCI Forrest City and maintained in BOP's Inmate Central Records System (Justice/BOP-005).  (See id. ¶ 12.) By letters dated February 2, and February 23, 2005, BOP advised plaintiff that it limited its search for responsive records to the "FOI Exempt" portion of his central file and advised plaintiff to seek local review of the rest of his central file and his medical file through FCI Forrest City staff members. (See id. ¶¶ 5, 7, 12 & Exs. 2, 4.)  Plaintiff was provided with a copy of the releaseable portions of his "FOI Exempt" records by letter dated February 23, 2005 and by supplemental release dated May 12, 2006.  (See id. ¶¶ 7-9 & Exs. 4-5.)

10.  An inmate's central file is divided into six sections, with an additional "Privacy Folder," or what is commonly referred

-5-

to as the "FOI Exempt" section.  (See id. ¶ 12 n.6.)  Inmates may
make appointments with local institution staff members to review
their central files, but are not permitted to review the Privacy
Folder/"FOI Exempt" section because it contains information, such
as an inmate's Case Information Monitoring (CIM) status,
victim/witness information, or similarly nondisclosable material
that BOP has determined would properly be protected from
disclosure pursuant to a FOIA exemption.  (Id.)  Requests for
access to the Privacy Folder portions of an inmate's central file
must be submitted to BOP's Central Office.  (Id.)

11.  Because the responsive records are criminal law
enforcement records located in BOP's Inmate Central Records
System (Justice/BOP-005) and are exempted by the Department of
Justice from the access provisions of the Privacy Act, pursuant
to Exemption (j)(2), as implemented by 28 C.F.R. § 16.97 (2005),
(see Summers Decl. ¶¶ 12-13 n.6.), BOP processed all of the
requested records for release solely under the FOIA.  (See id.
¶ 15.)

12.  BOP withheld portions of a CIM Case Information Summary
form pursuant to Exemption 2 ("high" 2) to protect internal
security techniques used by BOP to monitor inmate separation
assignments.  (See id. ¶ 25 & n.10.)  The CIM Case Information
Summary form is an "internal security management tool" used by
BOP to document and monitor an inmate's assigned separation from

-6-

other inmates.  (See id. ¶ 26.)  BOP separates inmates from each

other when staff members identify a specific threat or individual

from whom an inmate needs to be separated.  (Id.)  Documentation

to support separation assignments is maintained in the "FOI

Exempt" portion of an inmate's central file and such

documentation is summarized on a CIM Case Information Summary

form.  (Id.)  In addition to identifying specific threats, or

other inmates from whom an inmate must be separated, the CIM Case

Information Summary form documents other information, such as the

categorization for an inmate's separation, which could lead to

the identification of a specific threat to another individual, a

separated individual, or the location of a separated individual.

(Id.)  In this case, BOP withheld its internal rationale for a

separation assignment, BOP's source for that assignment, and its

specific categorization for plaintiff's separation assignment.[1]

    13.  BOP determined that the disclosure of these internal

security techniques could reasonably be expected to allow

plaintiff, or any another inmate, to circumvent the security

procedures implemented by BOP, thereby compromising the safety of

inmates and BOP staff members alike.  (See id. ¶ 27.)

    14.  BOP also protected records pursuant to Exemption 7.

These records are created in response to BOP's daily law

---

[1] Additionally, this specific categorization was withheld
also under Exemption 7(F).  (See id. ¶¶ 25, 27.)

-7-

enforcement mission to protect inmates, BOP employees, and the community at large. (See id. ¶¶ 15-16.) BOP executes the final phase of the federal law enforcement mission through management and care of federal prisons and of inmates within them. (See id. ¶ 15 & n.7.)

15. BOP protected, pursuant to Exemption 7(C), the names and/or information that describes private individuals in such detail as to allow a knowledgeable reader to discern their identities. (See id. ¶¶ 17-18.) Specifically, the BOP protected the social security numbers, driver's license information, and history of contact with other federal inmates relating to private citizens who were named as prospective visitors of plaintiff. (See id. ¶ 17.) BOP also withheld six pages of third-party criminal background checks. (See id. ¶¶ 8, 17.) BOP determined that the third parties referenced in plaintiff's files as prospective visitors had strong privacy interests in not wanting the disclosure of certain identifying information. (See id. ¶ 18.)

16. BOP protected, pursuant to Exemption 7(C) (and additionally pursuant to Exemption 7(F)), identifying information of other inmates named as plaintiff's separatees or referenced in plaintiff's investigative records. (See id. ¶¶ 17, 21.) BOP determined that there is no public interest in the disclosure of the information sufficient to outweigh the significant privacy

-8-

interests of the third-party inmates protected by Exemption 7(C) in this case. (See id. ¶¶ 18-19.)

17.  BOP protected, pursuant to Exemption 7(F) (in addition to Exemption 2), a portion of a CIM Case Information Summary form that documented BOP's specific categorization for plaintiff's separation assignment. (See id. ¶¶ 22, 25.)  BOP determined that disclosing plaintiff's separation categorization would provide plaintiff, or any other inmate, with enough information to deduce the name of a separatee by monitoring the attrition of other inmates. (See id. ¶¶ 22, 26.)

18.  BOP protected, pursuant to Exemption 7(F) (and also pursuant to Exemption 7(C)), identifying information of third-party inmates named as plaintiff's separatees or referenced in plaintiff's investigative records. (See id. ¶¶ 17, 21.)  BOP determined that disclosing the names and identifying information of third-party inmates could subject those third parties to harassment, retaliation, or other harm by federal inmates. (See id. ¶¶ 19, 23.)

19.  BOP searched for responsive records by using plaintiff's name as a search identifier to locate his central file at FCI Forrest City and which is maintained in BOP's Inmate Central Records System (Justice/BOP-005). (See id. ¶ 12.)  Only the "FOI Exempt" portion of plaintiff's file was processed in response to plaintiff's request, because the remainder of his

-9-

central file was made available for local review at FCI Forrest
City, where plaintiff is currently incarcerated, pursuant to BOP
policy. (Id.; see also BOP Program Statement 1351.05, Release of
Information (Sept. 19, 2002).)

20.  At the outset of this action, BOP conducted a second
search of the "FOI Exempt" portion of plaintiff's central file
for specific records mentioned in his complaint (incident reports
concerning "offense codes 201, 221, and 305"). (See id. ¶ 13;
Pl.'s Compl.)  BOP confirmed that the "FOI Exempt" section of
plaintiff's central file consisted solely of the twenty-nine
pages previously processed by BOP in response to plaintiff's
request. (See id. ¶ 13.)  These records encompassed documents
pertaining to BOP "offense code" 201. (See id. ¶ 13 & Exs.
4-5.)

21.  Additionally, BOP searched the main disclosable
sections of plaintiff's central file for records pertaining to
BOP "offense codes" 221 and 305 and located responsive records.
These records are available for plaintiff's direct review at FCI
Forrest City. (See id. ¶ 13.)

22.  On May 10, 2006, FCI Forrest City staff members granted
plaintiff direct on-site review of the main disclosable sections
of his central file and provided him with copies of twelve pages
from that file. (See id. ¶ 7 n.5 & Ex. 3.)

23.  On May 11, 2006, FCI Forrest City staff members granted
plaintiff direct on-site review of his medical file, and it

provided him with copies of five pages from that file on May 12, 2006. (Id.)

24. BOP reviewed all responsive records to determine whether any portion of the records could be segregated as nonexempt and disclosed. (See id. ¶ 29.) BOP provided plaintiff with additional segregable portions of four documents by letter dated May 12, 2006. (See id. ¶ 9.) In sum, BOP has disclosed to plaintiff all reasonably segregable, nonexempt information, withholding only six pages in full and sixteen pages in part. (See id. ¶¶ 8, 9, 29 & Exs. 4-5.)

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


Dated:  June 1, 2006          _____
                              JENNIFER H. ASHWORTH
                              (DC Bar # 475261)
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Avenue, NW
                              Suite 11050
                              Washington, DC  20530-0001
                              (202) 616-5478

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDOLFO ROMERO-CICLE,          )
                                )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No.  05-2303 (RJL)
                                )
U.S. DEPARTMENT OF JUSTICE,     )
                                )
        Defendant.              )
                                )

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

        This is an action under the Freedom of Information Act
(FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003), and the Privacy
Act of 1974, 5 U.S.C. § 552a (2000), in which the plaintiff seeks
access to certain records pertaining to himself that are
maintained by the Federal Bureau of Prisons (BOP).

        Defendant now has moved for summary judgment and in support
of that motion has filed herewith the declaration of Karen
Summers, Paralegal Specialist, South Central Regional Office
(SCRO) of BOP, United States Department of Justice [hereinafter
Summers Declaration].  This declaration details the chronology of
administrative correspondence relating to plaintiff's request,
describes the searches that BOP conducted for responsive records,
itemizes the documents in which excisions were made and those
that were withheld in full, and explains the bases upon which
portions of the information at issue were withheld pursuant to
Exemptions 2, 7(C), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(2),

-2-

(7)(C), and (7)(F), as well as Exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2).

Based upon the Summers Declaration, the entire record herein, and for the reasons set forth below, defendant respectfully submits that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

<u>Factual and Procedural Background</u>

By letter dated January 19, 2005, plaintiff, who is an inmate incarcerated at the Federal Correctional Institution located in Forrest City, Arkansas (hereinafter FCI Forrest City), submitted a request under the FOIA and the Privacy Act to BOP for access to all records pertaining to himself.[1] (<u>See</u> Summers Decl. ¶ 4 & Ex. 1.)  By letter dated February 2, 2005, BOP's SCRO assigned plaintiff's request number 2005-02497 and informed him that in response to his request, it had requested the "FOI Exempt" portion of his central file from FCI Forrest City for review and possible disclosure to plaintiff.  (<u>See</u> <u>id.</u> ¶ 5 & Ex.

_____

[1] Although plaintiff's request cited both the FOIA and the Privacy Act, the Privacy Act confers no right of access to the records at issue because they are all criminal law enforcement records.  (<u>See</u> Summers Decl. ¶¶ 13-14.)  Accordingly, those records are exempt from the access provision of the Privacy Act pursuant to subsection (j)(2), 5 U.S.C. § 552a(j)(2), as implemented by 28 C.F.R. § 16.97 (2005).  To provide plaintiff with the maximum allowable access to the requested records, plaintiff's request was processed pursuant to the FOIA.  (<u>See</u> Summers Decl. ¶ 14.)

-3-

2.)  Also, BOP advised plaintiff that in accordance with BOP

policy he should seek on-site review of the releaseable documents

in the main "disclosable" sections of his central and medical

files.[2]  (Id.)

     By electronic mail dated February 2, 2005, BOP directed FCI

Forrest City staff members to send a copy of the "FOI Exempt"

portion of plaintiff's central file to BOP's SCRO for review and

possible disclosure to plaintiff in response to his FOIA/Privacy

Act request.  (See id. ¶ 6 & Ex. 3.)  On February 15, 2005, FCI

Forrest City forwarded to BOP's SCRO twenty-nine pages of

responsive records located in the "FOI Exempt" portion of

plaintiff's central file.  (Id.)

     By letter dated February 23, 2005, BOP informed plaintiff

that it located twenty-nine pages of responsive records in the

"FOI Exempt" portion of his central file and reminded him to seek

---

[2] An inmate's central file is maintained at the prison in
which he is incarcerated, and contains all of his BOP records.
(See Summers Decl. ¶ 12 n.6.)  This central file is divided into
six "disclosable" sections, review of which is available to
inmates upon request submitted to local institution staff.  (Id.)
Alternately, the file contains an additional "Privacy Folder," or
"FOI Exempt" section, the contents of which are available to
inmates only pursuant to an inmate's written request and
subsequent processing by BOP under the FOIA and Privacy Act.
(Id.; see also BOP Program Statement 1351.05, Release of
Information, available at http://www.bop.gov.)  The Privacy
Folder contains all Central Inmate Monitoring (CIM) documents,
victim/witness records, and "other non-disclosable material from
the Inmate Central File."  (Summers Decl. ¶ 12 n.6.); BOP Program
Statement 5800.11, Inmate Central File, Privacy Folder, and
Parole Mini-Files, available at http://www.bop.gov.)

-4-

local review of the remaining portions of his central file.  (<u>See</u>
<u>id.</u> ¶ 7 & Ex. 4.)  BOP disclosed to plaintiff six pages in full,
disclosed seventeen pages in part, and withheld six pages in
full, with information being withheld pursuant to Exemption
(j)(2) of the Privacy Act and Exemptions 2, 7(C), and 7(F) of the
FOIA.  (<u>See</u> <u>id.</u> ¶¶ 7-8 & Ex. 4.)  BOP properly advised plaintiff
of his right to file an administrative appeal with the Office of
Information & Privacy (OIP).  (<u>See</u> <u>id.</u> ¶ 10 & Ex. 4.)  BOP also
reminded plaintiff to submit a request to FCI Forrest City staff
members for local review of the releasable records in his central
and medical files.  (<u>See</u> <u>id.</u> ¶ 7 & Ex. 4.)  By letter dated March
24, 2005, to OIP, plaintiff appealed BOP's action on his request.
(<u>See</u> <u>id.</u> ¶ 11 & Ex. 6.)  Before OIP could respond to his
administrative appeal, plaintiff filed his Complaint for judicial
review of BOP's action on his initial request.  (<u>See</u> Pl.'s
Compl.; Summers Decl. ¶ 11.)

     Subsequent to the initiation of this action, BOP again
reviewed the records responsive to plaintiff's request.  (<u>See</u> <u>id.</u>
¶ 9.)  As a result of this review, by letter dated May 12, 2006,
BOP disclosed to plaintiff additional portions of four pages that
were previously withheld from him.  (<u>See</u> <u>id.</u> ¶ 9 & Ex. 5.)  Thus,
in response to plaintiff's request, BOP has now disclosed seven
pages in full, disclosed sixteen pages in part, and withheld six

-5-

pages in full under the FOIA and the Privacy Act.  (See id.
¶¶ 7-9 & Exs. 4-5.)

Argument

SUMMARY JUDGMENT FOR DEFENDANT IS PROPER INASMUCH AS
NO INFORMATION HAS BEEN IMPROPERLY WITHHELD FROM PLAINTIFF

I.   Introduction

Initially, plaintiff submitted a general request for all
records concerning him that are maintained in BOP's files.  (See
id. ¶ 4 & Ex. 1.)  BOP advised plaintiff that it treated his
request as one seeking his medical and central files, but also
advised him that the scope of its search would be limited to
documents maintained in the "FOI Exempt" portion of his central
file because the disclosable portions of his central and medical
files are available for his direct review upon request from FCI
Forrest City staff members.  (Id.)  BOP routinely provides
inmates with on-site access at the local institution to the
disclosable sections of an inmate's central and medical files in
accordance with BOP Program Statement 1351.05, entitled "Release
of Information."  (See id. ¶¶ 5 n.3, 12 n.6.)  BOP also conducted
a second search of the "FOI Exempt" portion of his file and
confirmed that all responsive records had already been located,
processed, and disclosed in full or in part to plaintiff,
including records concerning plaintiff's violation of BOP code
201.  (See id. ¶ 13.)  Additionally, BOP searched the
disclosable, locally available, sections of plaintiff's central

-6-

file for records concerning incident reports pertaining to BOP
"offense codes" 221 and 305, and it identified responsive
records.  (Id.)  Those records are available for plaintiff's
review upon direct request to staff members at FCI Forrest City
in accordance with BOP Program Statement 1351.05, Release of
Information (Sept. 19, 2002).  (See id. ¶¶ 12 n.6, 13.)

    The Summers Declaration fully explains the nature of the
searches conducted for the requested records and contains a
complete description of all responsive information located and
BOP's justification for the denial of certain information
pursuant to Exemption (j)(2) of the Privacy Act in conjunction
with Exemptions 2, 7(C), and 7(F) of the FOIA.  On the basis of
the entire record herein, and for the reasons set forth below,
defendant respectfully suggests that it has not improperly
withheld information from plaintiff and that its motion for
summary judgment should be granted.

    II.  NO INFORMATION HAS BEEN
         IMPROPERLY WITHHELD FROM PLAINTIFF

    BOP's declaration filed herewith, fully responds to
plaintiff's claims in accordance with the statutory requirements
of the FOIA, as well as with the requirements of Vaughn v. Rosen,
484 F.2d 820, 827 (D.C. Cir. 1973), because it contains a
complete description of, and justification for, all the
information withheld by defendant pursuant to Exemption (j)(2) of
the Privacy Act in conjunction with Exemptions 2, 7(C), and 7(F)

-7-

of the FOIA.  (<u>See</u> Summers Decl. ¶¶ 14-27.)  As will be
demonstrated below, the invocation of each of these exemptions is
entirely justified under the law.

> A.  BOP Has Properly Invoked Exemption 2
>     <u>to Protect Internal Security Techniques</u>

Exemption 2 protects from disclosure records "related solely
to the internal personnel rules and practices of an agency."
5 U.S.C. § 552(b)(2).  The courts have interpreted the exemption
to encompass two distinct categories of information:  (a)
internal matters of a relatively trivial nature, sometimes
referred to as "low 2" information, and (b) more substantial
internal matters the disclosure of which would risk circumvention
of a legal requirement, often referred to as "high 2"
information.  <u>See</u>, <u>e.g.</u>, <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207
(D.C. Cir. 1992).  The Court of Appeals for the District of
Columbia Circuit has held that "predominantly internal"
information, that, if disclosed, could "significantly risk[]
circumvention of agency regulations or statutes," may be
protected as "high 2" information.  <u>Crooker v. ATF</u>, 670 F.2d
1051, 1074 (D.C. Cir. 1981) (en banc).  This case involves only
"high 2" information.[3]  (<u>See</u> Summers Decl. ¶¶ 24-25 & n.10.)

_____

[3] Due to an inadvertent administrative oversight, BOP
indicated in its supplemental release of May 12, 2006 that is was
invoking Exemption 2 "low" for the only information protected
pursuant to Exemption 2, rather than correctly indicating that
the information was protected from disclosure pursuant to
                                          (continued...)

-8-

In this case, BOP invoked Exemption 2 "high" to protect three portions of a CIM Case Information Summary form that described certain internal BOP security techniques.  (See id. ¶¶ 25, 27.)  Specifically, the CIM Case Information Summary form is an "internal security management tool" used by BOP staff members to document and monitor an inmate's separation status from other inmates.  (See id. ¶ 26.)  BOP separates inmates from each other when staff members identify a specific threat or individual from whom an inmate needs to be separated.  (Id.) Documentation to support such separation assignments is maintained in the "FOI Exempt" portion of an inmate's central file and such documentation is summarized on a CIM Case Information Summary form.  (Id.)  Here, BOP withheld its internal rationale for a separation assignment, BOP's source for that separation assignment, and its specific categorization for plaintiff's separation assignment.[4]  (See id. ¶¶ 25-27.)  This information is withheld pursuant to Exemption 2 "high" and clearly satisfies the first requirement of the Crooker test in that it consists of "predominately internal" security techniques used by BOP to monitor inmates' separatee status.  (Id.)

_____

[3](...continued)
Exemption 2 "high."  (See Summers Decl. ¶ 24 & n.10.)

[4] Additionally, this specific categorization was withheld also under Exemption 7(F).

-9-

The second requirement of such a "high 2" withholding --
risk to the agency -- is readily satisfied here as well.
Disclosure of these internal security techniques could reasonably
be expected to compromise the prison staff's ability to maintain
proper security levels, in that disclosure would allow plaintiff
to identify a specific threat to himself, another inmate, or the
location of a separated individual.  (See id. ¶¶ 26-27.)  In
addition to identifying specific threats, or identifying third-
party inmates from whom an inmate must be separated, the CIM Case
Information Summary form specifically documents the
categorization for an inmate's separation, which could again lead
to the identification of a specific threat to another individual,
a separated individual, or the location of a separated
individual.  (Id.)  The release of such information could be
expected to allow plaintiff and/or other inmates to circumvent
BOP's efforts to minimize security threats to prisoners and BOP
staff -- efforts that negate the disruption of inmates
"threatening or fighting one another based on information they
may perceive as giving credence to their cause or justifying
their actions."  (Summers Decl. ¶ 26.)  Disclosure of the
information described above  would inevitably compromise the
safety of both inmates and BOP staff members alike.  (See id.
¶ 26.)

-10-

In sum, recognizing that Crooker requires that documents be predominantly internal and that disclosure of the withheld information would significantly risk circumvention of the law, it is clear that the information described above was properly withheld from plaintiff under Exemption 2.

B.    BOP Has Properly Invoked Exemption 7
      to Protect Information
      Compiled for Law Enforcement Purposes

Exemption 7 of the FOIA, 5 U.S.C. § 552(b)(7), protects from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records" could reasonably be expected to cause the harms enumerated in subsections (b)(7)(A)-(F), 5 U.S.C. § 552(b)(7)(A)-(F).  See FBI v. Abramson, 456 U.S. 615, 622 (1982); see also, e.g., Monaco v. Dep't of Justice, No. 02-1843, slip op. at 6 (D.D.C. Sept. 24, 2003) (copy attached as Attach. A).  To satisfy this threshold requirement for the invocation of Exemption 7, BOP must demonstrate that the records or information at issue were compiled for law enforcement purposes.  See Keys v. U.S. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing with approval Pratt v. Webster, 673 F.2d 408, 420-21 (D.C. Cir. 1982)); Shaw v. FBI, 749 F.2d 58, 63-64 (D.C. Cir. 1984).

BOP is responsible for carrying out the final phase of the federal law enforcement mission -- management and care of federal correctional institutions and of the incarcerated individuals

-11-

within them.  (See Summers Decl. ¶ 15 & n.7.)  To perform the
mission safely and effectively, it is absolutely critical that
BOP prison administrators be able to maintain the safety and
security of BOP facilities and to prevent criminal activities
from occurring within the prison.  (Id.)  The records responsive
to plaintiff's request are located in BOP's Central Files, a
filing system that serves as a repository for all records
pertaining to each inmate and that is essential to BOP's law
enforcement mission.  (See id. ¶ 12 & n.6.)  This Court has
previously held that "BOP's records, including Central Files
pertaining to prisoners in BOP custody, are essential for BOP
staff to carry out the agency's law enforcement mission."
Monaco, No. 02-1843, at 6.

      C.  BOP Has Properly Withheld Third-Party
         Information Pursuant to Exemption 7(C)
         Because Release Could Reasonably Be Expected
         to Constitute an Unwarranted Invasion of Privacy

Exemption 7(C) of the FOIA protects from disclosure "records
or information compiled for law enforcement purposes, but only to
the extent that production of such law enforcement records or
information . . . (C) could reasonably be expected to constitute
an unwarranted invasion of personal privacy."  5 U.S.C.
§ 552(b)(7)(C).  Determining whether information has been
properly withheld under this exemption requires a balancing of an
individual's right to privacy against the public's right of
access to information in government files.  See U.S. Dep't of

-12-

Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989); see also SafeCard Servs. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991); Diamond v. FBI, 707 F.2d 75, 77 (2d Cir. 1983); Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 862 (D.C. Cir. 1981).  If release of a document could be expected to invade a third party's privacy interests, but would shed no meaningful light on government functions, it is properly withheld pursuant to Exemption 7(C). See Reporters Comm., 489 U.S. at 774.  In this case, BOP invoked Exemption 7(C) to withhold the names and identifying information of third-party inmates who were named as separatees of plaintiff or who were mentioned in an internal BOP investigation of plaintiff.  (See id. ¶¶ 17, 21.)  Further, BOP withheld social security numbers, driver's license information, and history of contact with other federal inmates relating to private citizens named as prospective visitors of plaintiff.  (See id. ¶ 17.)  BOP also withheld in their entireties six pages of third-party criminal background checks.  (See id.  ¶¶ 8, 17.)

With respect to the withholding of third-party inmate information, there is a distinct privacy interest in such information, especially within the "closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so."  Wolff v. McDonnell, 418 U.S. 539, 561 (1974).  In

-13-

particular, inmates could reasonably be expected to face
harassment, retaliation, or other harm within the institution if
BOP were to disclose identifying information concerning third-
party inmates who are named as plaintiff's separatees or
referenced in connection to an internal BOP investigation of
plaintiff.  (See Summers Decl. ¶¶ 17, 21.)  It is also well
settled that personally identifying information about subjects of
investigation or third parties mentioned in the records of an
investigation is protected by Exemption 7(C).  See, e.g.,
Anderson v. U.S. Marshals Serv., 943 F. Supp. 37, 39 (D.D.C.
1996); Bruscino v. Fed. Bureau of Prisons, No. 94-1955, 1995 WL
444406, *10 (D.D.C. 1995) (copy attached as Attach. B).  BOP
properly withheld this type of privacy information from
plaintiff.  (See Summers Decl. ¶¶ 17, 21.)

Additionally, private citizens might be subjected to undue
publicity or harassment for being named in connection with
federal law enforcement records.  (See id. ¶ 18.)  The Supreme
Court has recognized the privacy interest inherent in law
enforcement information pertaining to third parties and has held
"as a categorical matter that a third party's request for law
enforcement records or information about a private citizen can
reasonably be expected to invade that citizen's privacy."
Reporters Comm., 489 U.S. at 780; see also Davis v. U.S. Dep't of
Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); SafeCard Servs. v.

-14-

SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991); Fund for
Constitutional Gov't, 656 F.2d at 863-66; Baez v. U.S. Dep't of
Justice, 647 F.2d 1328, 1338 (D.C. Cir. 1980); Bartolotta v. FBI,
No. 99-1145, slip op. at 5-6 (D.D.C. July 13, 2000) (protecting
identities of "exclusively personal information regarding
potential visitors to incarcerated plaintiff") (copy attached as
Attach. C).  Therefore, BOP properly determined that the third
parties referenced in plaintiff's files as prospective visitors
had strong privacy interests in the nondisclosure of certain
identifying information.

Having established the privacy interest in the withheld
information concerning third-party inmates and private citizens,
BOP then took the next step under Exemption 7(C), i.e.,
determining whether disclosure of the withheld information would
shed light on the operations and activities of the government.
See Reporters Comm., 489 U.S. at 772.  BOP determined that
although plaintiff may be very interested in the contents of the
third-party information described above, there is no public
interest in disclosure of this particular information.  (See id.
¶ 18.)  It is well established that plaintiff's personal interest
in full disclosure of the records at issue does not rise to the
level of a public interest in a FOIA action when the withheld
material in question "reveals little or nothing about an agency's
own conduct."  Hazel v. Dep't of Justice, No. 95-1992, slip op.

-15-

at 8 (D.D.C. July 2, 1998) (copy attached as Attach. D); see
Reporters Comm., 489 U.S. at 773.

In light of the fact that there is no public interest in the
disclosure of the third-party information at issue in this case,
even the slightest privacy interest will tip the balance against
disclosure. See Beck v. Dep't of Justice, 997 F.2d 1489, 1494
(D.C. Cir. 1993) (observing that when a request implicates no
public interest at all, court "'need not linger over the balance;
something . . . outweighs nothing every time'" (quoting Nat'l
Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879
(D.C. Cir. 1989))). Therefore, because no public interest would
be served by release of the personal information at issue in this
action, and because there exists significant privacy interests
for all third parties identified in plaintiff's central file,
defendant respectfully suggests that the information described
above has properly been withheld from disclosure pursuant to
Exemption 7(C).

> D. BOP Has Properly Withheld Information
> Necessary to Protect the Physical Safety of
> Individuals Pursuant to 5 U.S.C. § 552(b)(7)(F)

Exemption 7(F) of the FOIA protects "any individual" when
the disclosure of the information, "could reasonably be expected
to endanger [his or her] life or physical safety." 5 U.S.C.
§ 552(b)(7)(F). Exemption 7(F) affords expansive protection to
individuals mentioned in law enforcement files, and courts have

-16-

applied the broader coverage of this exemption by holding that it can protect the "names and identifying information of . . . third persons who may be unknown" to the requester/plaintiff in the specific context of particular law enforcement matters.  Luther v. IRS, No. 5-86-130, slip op. at 6 (D. Minn. Aug. 13, 1987) (copy attached as Attach. E); see also, e.g., Hidalgo v. Bureau of Prisons, No. 00-1229, slip op. at 4 (D.D.C. June 6, 2001) (withholding information about inmate-plaintiff's "separatees"), summary affirmance granted, No. 01-5257 (D.C. Cir. Aug. 29, 2002) (copy attached as Attach. F); Bartolotta, No. 99-1145, at 5-6 (protecting identities of inmate-plaintiff's "separatees"); Anderson, 943 F. Supp. 37 at 40 (protecting identity of individual who required separation from incarcerated requester when disclosure could endanger his safety).

     In the present case, BOP invoked Exemption 7(F), in addition to Exemption 2, to protect BOP's internal categorization of plaintiff's separation assignment on his CIM Case Information Summary Form.  (See id. ¶¶ 22, 25.)  On this form, there are two distinct categories that can be chosen by BOP when categorizing the reason for an inmate's separation from other inmates -- "threat assessment" or "special management case."  (See id. ¶ 22.)  BOP appropriately withheld the exact separation category chosen because revealing such would obviously disclose BOP's reason for separating another inmate and would provide plaintiff

-17-

with enough information to help him deduce the name of a
separatee (by monitoring the attrition of other inmates), which
could result in very real harms to other inmates.  (See id.
¶ 22.)  BOP determined that denying access to this information
was necessary to protect the identities and the safety of other
inmates who were referenced as subjects of investigation and/or
monitoring by institution staff.  (See id. ¶¶ 22-23.)  If the
identities of these third-party inmates became known within the
institution, the individuals could face threats, harassment, or
other actions at the direction and discretion of other inmates.
As such, disclosure could also result in disruption to BOP's
security of FCI Forrest City.  (Id.)

    BOP also invoked Exemption 7(F), in addition to Exemption
7(C), to protect the information concerning third-party inmates
who were named as plaintiff's separatees and also the names and
identifying information of the third-party inmates who were
referenced in connection with a BOP investigation of plaintiff
while incarcerated at FCI Forrest City.  (See id. ¶¶ 17, 21.)
This Court has specifically held that under the FOIA, a
"[p]laintiff is not entitled to disclosure of the identity of
other inmates from whom he is separated."  Monaco, No. 02-1843,
at 10.  Moreover, the Supreme Court has recognized the existence
of "very real dangers in prison life which may result from
violence or intimidation directed at either other inmates or

-18-

staff," <u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985), and it has

consistently noted that the prison environment is a dangerous

place "peopled by those who have been unable to conduct

themselves properly in a free society" and who may "have scant

regard for property, life, or rules of order," <u>id.</u> The Court has

also pointed out that "'the normal activity' to which a prison is

committed -- the involuntary confinement and isolation of large

numbers of people, some of whom have demonstrated a capacity for

violence -- necessarily requires that considerable attention be

devoted to the maintenance of security." <u>Pell v. Procunier</u>, 417

U.S. 817, 826 (1974).  In fact, the maintenance of order and

security is "paramount" to prison administration and "central to

all other corrections goals." <u>Pell</u>, 417 U.S. at 823, 827.[5]

     Indeed, it is difficult to imagine any circumstance in which

the public's interest in disclosure could outweigh the personal

safety of any individual.  <u>See Colon v. Executive Office for U.S.</u>

<u>Attorneys</u>, No. 98-0180, 1998 WL 695631, at *6 (D.D.C. Sept. 29,

1998) (reiterating that it is not in public interest to disclose

identities of law enforcement officers); <u>Franklin v. U.S. Dep't.</u>

<u>of Justice</u>, No. 97-1225, slip op. at 15 (S.D. Fla. June 15, 1998)

---

[5] In order to maintain institutional security and protect
inmates, employees, and the public, it is necessary to defer to
the expert judgment of prison officials "in the absence of
substantial evidence in the record to indicate that the officials
have exaggerated their response to these considerations." <u>Pell</u>,
417 U.S. at 827.

-19-

(magistrate's recommendation) (finding that "it is in the public interest" to protect names of DEA agents), adopted (S.D. Fla. June 26, 1998) (both copies attached as Attach. G).  Accordingly, BOP properly determined that release of the information described above reasonably could be expected to risk the lives or safety of individuals, and defendant respectfully submits that withholding the information described above was appropriate pursuant to Exemption 7(F), as well as pursuant to Exemptions 2 and 7(C).

   III.  SEGREGABILITY OF THE WITHHELD RECORDS

   In preparation of its declaration in this case, BOP conducted another review of the twenty-nine pages of records responsive to this request to determine whether any additional information could be released.  (See Summers Decl. ¶ 9.)  After a thorough analysis, BOP determined that certain portions of four pages previously withheld from plaintiff could be disclosed, and it subsequently disclosed those portions to plaintiff by letter dated May 12, 2006.  (Id. & Ex. 5.)  The remaining withheld information is described above and remains properly withheld from disclosure pursuant to the above-cited exemptions.  With its supplemental release, BOP has determined that all reasonably segregable, nonexempt portions of the records have now been released to plaintiff.  (See id. ¶ 29.)

-20-

Conclusion

For the reasons set forth above, and based upon the entire record herein, defendant respectfully submits that its motion for summary judgment should be granted.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


Dated:  June 1, 2006
_____
JENNIFER H. ASHWORTH
(DC Bar #475261)
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue, NW
Suite 11050
Washington, DC  20530-0001
(202) 616-5478