FILE COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY E. HAZEL,

    Plaintiff,

v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 95-01992 (CKK)

FILED

JUL - 2 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

MEMORANDUM OPINION

Serving a life sentence for murdering a fellow inmate while imprisoned at the Lorton Reformatory, Plaintiff Bobby E. Hazel has brought suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to challenge the Defendant's invocation of several FOIA exemptions. Pending before the Court are cross-motions for summary judgment from both Hazel and the Department of Justice. After reviewing carefully the briefs, affidavits, and *Vaughn* index, the Court grants in part Defendant's motion for summary judgment. While the Defendant properly withheld certain documents under valid FOIA exemptions, it failed to explain with reasonable specificity why it could not segregate non-exempt portions of information from exempt material.

I. BACKGROUND

On February 11, 1993, a federal grand jury sitting in the Eastern District of Virginia returned an indictment that charged Hazel with one count of first-degree murder, 18 U.S.C. § 1111, and one count of possession of a dangerous weapon, 18 U.S.C. § 13 (assimilating VA. CODE ANN. § 52.1-203(4)). At trial, the evidence indicated that Hazel and another individual, both serving prison sentences at the Lorton Reformatory, conspired to stab a fellow inmate

named Gregory Ford. After the jury found Hazel guilty of first-degree murder and possession of a dangerous weapon, the district court sentenced him to life imprisonment. The Fourth Circuit affirmed Hazel's conviction on both collateral and direct appeal. *See United States v. Hazel*, 131 F.3d 137 (4th Cir. 1997) (per curiam), *cert. denied*, 118 S. Ct. 1402 (1998); *United States v. Hazel*, 33 F.3d 53 (4th Cir. 1994) (per curiam), *cert. denied*, 115 S. Ct. 1356 (1995).

On June 1, 1994, Hazel submitted a written FOIA request to the Department of Justice. In it, he sought the release of all documents and evidence pertaining to his first-degree murder conviction. The Federal Bureau of Investigation ("FBI") determined that there were 163 pages of material that were responsive to Hazel's request. *See* Dec. of Bobbie S. Olivarri ¶ 5; *id.* at Ex. C. Of this total, the FBI released 127 pages; withholding the remaining material pursuant to one or more of the following exemptions: (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). Believing that the Department of Justice violated FOIA by refusing to disclose certain documents, Plaintiff filed the present action on October 24, 1995.

## II. DISCUSSION

A.   *The mechanics of summary judgment in FOIA cases*

The Freedom of Information Act, 5 U.S.C. § 552, provides generally for public access to federal agency records. The FOIA also provides certain exemptions from releasing certain information based on personal privacy rights, national security implications and information that fails to provide any insight into the workings of the agency.

Summary judgment should be granted when "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). A district court may grant summary judgment in FOIA cases solely on the basis of an agency affidavit if the affidavit is clear, specific, reasonably detailed, and there

2

is no contradictory evidence on the record or evidence of agency bad faith. *See Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). In such instances, the agency has the burden of justifying nondisclosure. *See DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden on the agency to sustain its action."). Thus, the government is required to prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).

To facilitate the district court's review of claimed exemptions, agencies must prepare a *Vaughn* index that catalogs the documents withheld and correlates them to specific FOIA exemptions. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). This Circuit has quite recently held that

> [t]he purpose of a *Vaughn* index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests—who are, necessarily, at a disadvantage because they have not seen the withheld documents—can generally prevail only by showing that the agency's *Vaughn* index does not justify withholding information under the exemptions invoked.

*Kimberlin v. Department of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (quoting *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992)). The *Vaughn* index not only tests the agency's proffered reason for withholding a document, but it also permits the district court to assess *de novo* whether the agency improperly withheld non-exempt portions of documents. As this Circuit has construed that seminal case, "*Vaughn* itself requires agencies to 'specify in detail

which portions of the document are disclosable and which are allegedly exempt.'" *Schiller*, 964 F.2d at 1210 (quoting *Vaughn*, 484 F.2d at 827). Indeed, "[a] submission that does not do that does not even qualify as a '*Vaughn* index.'" *Id.*

### B. Analysis of the exemptions claimed

#### 1. Exemption 2

Exemption 2 permits the withholding of records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552 (b)(2). The United States Court of Appeals for the District of Columbia Circuit has held that the exemption "applies to 'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest." *Lesar v. DOJ*, 636 F.2d 472, 485 (D.C. Cir. 1980); *see also National Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528–30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073–74 (D.C. Cir. 1981); *Putnam v. DOJ*, 873 F. Supp. 705, 710 (D.D.C. 1995) (noting that Exemption 2 "may properly be invoked when the information withheld is used predominately for internal purposes and when release of the information risks circumvention of the law").

The Defendant invoked Exemption 2 to redact discrete items of information from the documents provided to Hazel. The information withheld pursuant to this Exemption consists of three categories: a confidential-source file number, a confidential-source symbol number, and a file number of a third party. *See* Dec. of Olivarri ¶¶ 21–26. A confidential-source file number consists of a numerical prefix, which is assigned according to the nature of the information provided by the source, and a sequentially assigned number that is unique to the particular confidential source. *See id.* ¶ 22. Permanent confidential source file numbers are used

4

exclusively as internal identifiers for administrative control; they neither contain nor reflect any independent substantive information. *See id.* Similarly, a permanent-source symbol number is an internal administrative code that facilitates the flow of information received from sources. A symbol number contains a two-letter abbreviation that identifies the particular FBI field office where the symbol numbered source is operating or has operated, followed by a sequentially assigned number. *See id.* ¶ 24. Finally, the Defendant invoked Exemption 2 to withhold the file number of an investigation concerning someone other than the Plaintiff. *See id.* ¶ 26. Investigative file numbers have unique designations for particular individuals, organizations, or events. They are purely tools of administrative ease. Like the other codes, they offer no useful information in their own right. *See id.* ¶ 26.

Defendant properly invoked Exemption 2 to withhold the confidential-source file number, the permanent-source symbol number, and the third-party file number. For almost two decades, the law of this Circuit has recognized that

> [t]he means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest. These symbols bear no relation to the substantive contents of the records released .... Their only real values lies in their use as a mechanism to control the internal and external dissemination of the actual identities of FBI informants.

*Lesar v. DOJ*, 636 F.2d at 486 (citation omitted); *see also Schwaner v. Department of the Air Force*, 898 F.2d 793, 796 (D.C. Cir. 1990) (noting that this Circuit has permitted an agency to "delete sensitive notations on documents where they indicated an agency's practices as to their internal routing and distribution"); *Putnam*, 873 F. Supp. at 710 (concluding that FBI "symbol and file numbers plainly fall within the ambit of Exemption 2"). Because neither Hazel nor "the public has [a] legitimate interest in gaining information that could lead to the exposure of

confidential sources referred to in criminal investigative files," *Lesar*, 636 F.2d at 486 (citation omitted); the Court holds that Defendant rightfully invoked Exemption 2 in this case.

    2.    *Exemption 7(C)*

Exemption 7(C) permits an agency to withhold information "compiled for law enforcement purposes" to the extent that such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As this formulation suggests, two conditions must exist before this Exemption may be invoked. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). First, the information sought must have been gathered for law enforcement purposes; and second, the information could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See id.* Hazel claims that the information withheld under Exemption 7(C) was not compiled for a "legitimate law enforcement purpose." Pl.'s Aff in Opp'n to Def.'s Mot. for Summ. J. ¶ 2. Clearly, this is not so. As the agency's affidavit and the documents themselves manifestly demonstrate, each document was compiled during the course of an investigation into a brutal murder inside the Lorton Reformatory. *See* Dec. of Olivarri ¶¶ 12, 27. Careful review of the materials in this case leaves no doubt that the documents were compiled for a "legitimate law enforcement purpose."

Having resolved that threshold question, the inquiry turns to whether disclosure of this information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The Defendant withheld information concerning (1) the names of Special Agents and support personnel of the FBI, (2) identities and personal information concerning individuals who furnished information to the FBI under an implied assurance of confidentiality, (3) identity of and personal information concerning one individual who furnished information to the FBI under

6

an expressed assurance of confidentiality, (4) identities of and personal information concerning third-party individuals who were of investigative interest to the FBI, (5) identities of and personal information for District of Columbia Detention Center officers and the information that they furnished, (6) the names and identifying information of local law enforcement officers or employees, and (7) the file number of a third party. *See* Dec. of Olivarri ¶ 30.

To evaluate the propriety of these redactions, the Court must balance the privacy interests involved against the public interest in disclosure. *See Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991). Release of the withheld information would undoubtedly touch upon the privacy interests of individuals in each of the seven categories enumerated above. The contours of Exemption 7(C) are broad enough to encompass the innocent private third-party as well as the principal officials in a criminal investigation. *See Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Recognizing Exemption 7(C)'s expansive scope, this Circuit has held that "persons involved in FBI investigations—even if they are not the subject of the investigation— 'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (quoting *King v. DOJ*, 830 F.2d 210, 233 (D.C. Cir. 1987)); *see also Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (holding that Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators"). Indeed, this conclusion is easily justifiable once it is conceded that "[t]here is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *Senate of the Commonwealth of P.R. v. DOJ*, 823 F.2d 574, 588 (D.C. Cir. 1987); *see also Lesar*, 636 F.2d at 487 ("[T]he [FBI] agent by virtue of his official

status does not forgo altogether any privacy claim in matters related to official business.").

The substantial privacy interests implicated by Hazel's FOIA requests far outweigh any putative public interest. By now it is a well-recognized tenet of FOIA litigation that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Reporters Committee*, 489 U.S. at 773). Hazel's request, made admittedly to aid his collateral attack on his conviction pursuant to 28 U.S.C. § 2255, "reveals little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773. Even were Hazel's request capable of potentially indicating what the "government is up to," the "public interest is 'insubstantial' unless the requester puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought 'is necessary in order to confirm or refute that evidence.'" *Davis*, 968 F.2d at 1282 (quoting *SafeCard Servs.*, 926 F.2d at 1205–06). Here, Hazel has marshaled no evidence—much less compelling evidence—that the Defendant has engaged in illegal activity. The relative privacy and public interests thus assessed, the Court concludes that the proper balance favors the Defendant's decision to invoke Exemption 7(C).

    3.    *Exemption 7(D)*

Exemption 7(D) of the FOIA provides in pertinent part:

> This section does not apply to . . . records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information

8

furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). This case turns on the second clause of Exemption 7(D), which "expressly permits the government to withhold 'information furnished by a confidential source' to a 'criminal investigation.'" *Parker v. DOJ*, 934 F.2d 375, 380 (D.C. Cir. 1991). Thus, where properly invoked, Exemption 7(D) authorizes the agency to withhold not only the name and identifying data of a confidential source, but also all the information that the confidential source provides. This Circuit and a number of its sister circuits have held that once the agency receives information from a "'confidential source' during the course of a legitimate criminal law investigation . . . *all such information obtained from the confidential source receives protection.*" *Lesar v. DOJ*, 636 F.2d 472, 492 (D.C. Cir. 1980) (emphasis added); *see also Irons v. FBI*, 880 F.2d 1446, 1447 (1st Cir. 1989) (en banc); *Kiraly v. FBI*, 728 F.2d 273, 278–80 (6th Cir. 1984); *Lame v. DOJ*, 654 F.2d 917, 923 (3d cir. 1981); *Scherer v. Kelley*, 584 F.2d 170, 176 n.7 (7th Cir. 1978). Moreover, unlike its duty under Exemption 7(C), the district court should not balance interests under Exemption 7(D). *See Paker*, 934 F.2d at 380; *Lesar*, 636 F.2d at 492.

The Defendant withheld and/or redacted a number of pages pursuant to Exemption 7(D). In its *Vaughn* index, the Defendant identified one or more of the following five rationales when it invoked Exemption 7(D): (1) a confidential-source file number, (2) a permanent-source symbol number,[1] (3) the identity and the information provided by one individual under an expressed assurance of confidentiality, (4) the identities and the information provided by individuals under

---

[1] As the Court already has held in Subsection II.B.1 of this Memorandum Opinion, both the confidential-source file number and the permanent-source symbol number were properly redacted pursuant to Exemption 2.

9

implied assurances of confidentiality, and (5) the information provided by a permanent symbol number source. *See* Dec. of Olivarri ¶¶ 54-67.

The relevant portion of Exemption 7(D) requires two variables to be present: (1) that the record or information be compiled by a criminal law enforcement authority in the course of a criminal investigation and (2) that the information be furnished by a confidential source. As for the first requirement, each of the documents withheld or redacted based on Exemption 7(D) qualifies as information compiled by a law enforcement authority in the course of a criminal investigation. This information was solicited by the FBI during the course of investigating the heinous murder of an inmate at the Lorton Reformatory pursuant to 18 U.S.C. §§ 1111 and 2 (murder) and § 13 (assimilating VA. CODE 53.1-202(4) (prisoner in possession of a weapon)). *See id.* ¶ 52. The Defendant, therefore, is correct that this information was compiled by a law enforcement authority during the course of a legitimate criminal investigation.

The Defendant also has demonstrated that the information withheld was provided by "confidential sources." "A person is a confidential source 'if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Parker v. DOJ*, 934 F.2d 375, 377 (D.C. Cir. 1991) (quoting S. REP. No. 1200, 93d Cong. 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291). For the one individual who spoke on condition of express confidentiality, the inquiry is easy: there can be no doubt but that he is a "confidential source." The more difficult question is whether the remaining individuals shared information with the FBI under an implied assurance of confidentiality. To resolve this question, the starting point is the Supreme Court's recent decision in *Department of Justice v. Landano*, 508 U.S. 165 (1993). In *Landano*, the Court rejected the government's

argument that every source who communicates with the FBI during the course of a criminal investigation does so with an implied assurance of confidentiality. *See id.* at 177–78. While refusing to recognize such an absolute rule, the Court did, however, endorse a "more particularized approach" that looks to the surrounding context of the investigation to determine if an implied assurance of confidentiality may be fairly inferred. *See id.* at 179–80. Citing favorably this Circuit's decision in *Keys v. United States Dep't of Justice*, 830 F.2d 337, 345–46 (D.C. Cir. 1987), the Supreme Court found two factors peculiarly important in determining whether a source is confidential: "the nature of the crime and the source's relation to it." *Id.* at 179.

Here, the nature of the crime that gave rise to the FBI's investigation was the brutal murder of a prison inmate, Gregory Ford. The victim was stabbed numerous times, including once through the aorta with a large shank. *See id.* In one of the cases that the *Landano* Court cited with approval, *Nix v. United States*, 572 F.2d 998 (4th Cir. 1978), the Fourth Circuit reasoned that the risk of reprisal faced by guards and prison inmates who informed on guards who allegedly beat another inmate supported a finding of an implied assurance of confidentiality. *See id.* at 1003–04. Not only is Hazel's cold-blooded murder of a fellow inmate grotesque, but it also occurred in an environment that draws all inmates into its vortex. That is, in the close-quarter context of prison, the killing of one inmate by another affects all inmates. Based on the brutality of the crime and the close relation that inmates had to the crime, the Court concludes that individuals who volunteered information to the FBI would have done so only under an expectation of confidentiality. Such circumstances strongly indicate an implied assurance of confidentiality.

Having resolved these difficult threshold questions, the Court's duty of *de novo* review under Exemption 7(D) is easy. Because there is no balancing test to apply, it remains only to be seen whether each of the documents withheld pursuant to Exemption 7(D) satisfy its two requirements. After carefully reviewing the *Vaughn* index and accompanying affidavit, the Court concludes that Exemption 7(D) was invoked properly to withhold all information provided by confidential sources to the FBI during the course of its criminal investigation.

    4.    *Exemption 7(F)*

In conjunction with Exemptions 7(C) and 7(D), the Defendant also withheld names and identifying information of individuals pursuant to Exemption 7(F), which exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such . . . records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Courts within this jurisdiction have held that Exemption 7(F) "affords broad protection to the identities of individuals mentioned in law enforcement files." *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996); *see also Epps v. DOJ*, 801 F. Supp. 787, 795 (D.D.C. 1992).

The Defendant invoked Exemption 7(F) out of concern for the safety of those individuals who provided information to the FBI during its investigation of Gregory Ford's murder. The affidavit of Bobbie Olivarri indicates that from January 1996 until May 1997, the Lorton Facility witnessed 123 major assaults—the majority of which constituted stabbings. *See* Dec. of Olivarri ¶ 69. During that same time, three inmates were killed because of violent assault while thirty-four violent incidents against staff members were reported. *See id.* To release the identify of inmates or staff members who assisted the FBI's investigation would seriously jeopardize the

12

safety of these individuals. Therefore, the Defendant was justified in invoking Exemption 7(F) to withhold the names and identifying information of sources interviewed and DCDC officials who assisted the FBI during its investigation. *See Jimenez*, 938 F. Supp. at 31.

### C.   *Segregability*

The FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Put to practice, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). So important is the segregability inquiry under the FOIA that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

In the original affidavit that accompanied the *Vaughn* index, the Defendant made only one spare reference in passing to the segregability requirement: "Every effort was made to provide the plaintiff with all reasonably segregable portions of the material requested." Dec. of Olivarri ¶ 16. This unsophisticated parroting of FOIA's statutory language is patently insufficient. Such a blanket, conclusory statement utterly defies the well-established precedent that governs an agency's obligation to segregate non-exempt material:

> [T]he withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.

13

*King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987) (emphasis added).

Perceptively, the Defendant inferred from this Court's Order dated June 12, 1998 that the Court was likely to find its *Vaughn* index inadequate with respect to findings of segregability. In response, the Defendant submitted a declaration from Sherry L. Davis, a Supervisory Special Agent with the FBI. How counsel for the Defendant believed that Ms. Davis's declaration would salvage its woefully insubstantial *Vaughn* index is a perplexing mystery. While, unlike Ms. Olivarri, Ms. Davis dedicates more than just one sentence to the issue of segregability, her declaration languishes from the same infirmity that plagues Ms. Olivarri's—a useless resort to conclusory statements that merely echo the words and phrases that the D.C. Circuit has invoked to describe the government's obligation. At her most precise moment, Ms. Davis states: "The redactions were made on each document as narrowly as possible without compromising the information sought to be protected. All information withheld was exempt from disclosure either pursuant to a FOIA exemption or because it was so intertwined with portected [sic] material that further segregation was not possible, or because release of additional information would have revealed the underlying protected material." Dec. of Davis ¶ 4.

Yet as this Circuit recently remarked when faced with a similarly conclusory agency affidavit, "[n]either the [plaintiff] nor the court, however, is obliged to accept that conclusion without more specification of the types of material in the file." *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998). Like the declarations of Ms. Davis and Ms. Olivarri, the agency declaration in *Kimberlin* failed to "specify in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827. Rather, the agency in *Kimberlin* merely posited that "[r]elease of any of the file, whether redacted or not, would

14

necessarily . . . cause AUSA Thar's name to be associated with allegations of misconduct and could cause him 'great personal and professional embarrassment.'" *Kimberlin*, 139 F.3d at 950.[2]

Nor does the fact that these documents spring from a sensitive criminal investigation insulate the agency from the FOIA's segregability command or permit it to submit vague, nonspecific declarations about segregability. In *Armstrong v. Executive Office of the President*, 97 F.3d 575 (D.C. Cir. 1996), a case that touched upon sensitive foreign intelligence and national security, the D.C. Circuit affirmed the district court's determination that the government affidavits demonstrated with "reasonable specificity" why the documents could not be further segregated. *See id.* at 578. There, however, the government heeded *Schiller*'s rule that "requires the agency to correlate claimed exemptions with particular passages [within each document]." *Id.* In contrast to the Defendant's submissions in this case, the government in *Armstrong* justified its refusal to segregate by providing detailed descriptions of the documents and the reasons why further segregation was impossible. In one document, for example, the government averred that it could not segregate any portion "because it discusses throughout intelligence data as well as cooperative counter-terrorist actions flowing from that intelligence." *Id.* The Circuit also recognized the sufficiency of the agency's rationale for refusing to segregate in another document: "This note consists of an extensive review of numerous intelligence cables, revealing one piece of specific intelligence after another. Accordingly, there are no further intelligible,

---

[2] Interestingly, the Circuit noted that "[i]n the most egregious instance the Government claims that Exemption 7(C) applies to a 37-page document consisting of a cover letter and 36 pages described only as 'material collected by the United States Attorney's Office.'" *Id.* at 950. Perhaps equally egregious, the Defendant in this case invokes Exemption 7(C) to withhold ten full pages from a document without making "reasonably specific" findings concerning whether any portion of that document may be segregable.

non-classified portions which can be segregated." *Id.* at 579.

By no means rich with detail or lavish with compromising revelations, the government's affidavits in *Armstrong* were "reasonably specific" to permit the district court to make intelligent findings about segregability as to each document withheld. No such "specificity" lurks within the Defendant's declarations in this case. On remand to the agency, the Defendant shall follow strictly these instructions: First, the Defendant shall resubmit a *Vaughn* index that separately identifies each document with a unique number.[3] Second, for each document in which information has been redacted or withheld based on Exemptions 7(C) and 7(F), the Defendant shall "'specify in detail which portions of the document are disclosable and which are allegedly exempt.'" *Schiller*, 964 F.2d at 1210 (quoting *Vaughn*, 484 F.2d at 827). In doing so, the Defendant *shall not offer one finding for all documents*. Rather, the Defendant shall make specific findings *for each document withheld*. The government is advised that it should consider the agency affidavits in *Armstrong* to be a model that it should emulate when describing the contents of documents and the ability to segregate redacted material further. Finally, the Defendant shall "correlate claimed exemptions with particular passages." *Schiller*, 964 F.2d at 1209.

### III. CONCLUSION

The Court finds that the Defendant properly invoked Exemptions 2, 7(C), 7(D), and 7(F) in refusing to disclose certain documents to Hazel. Its inexcusable failure to demonstrate with

---

[3] The government's current *Vaughn* index is simply a reproduction of all the pages forwarded to Hazel. Individual documents are not labeled nor are pages even numbered to permit the Court to refer to specific items or portions of the released material.

reasonable specificity why redacted portions could not be further segregated frustrates this Court's obligation to "make specific findings of segregability *regarding each of the withheld documents.*" *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C. Cir. 1993).

Accordingly, Defendant's motion for summary judgment is granted in part and denied in part. An Order accompanies this Memorandum Opinion.

July 1, 1998

COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to:

Bobby E. Hazel
Reg. No. 41097-133
P.O. Box 3000
White Deer, PA 17887

David T. Smorodin
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY E. HAZEL,

    Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 95-01992 (CKK)

FILED

JUL - 2 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

ORDER

For the reasons expressed in the accompanying Memorandum Opinion, it is, this ___ day of July 1998, hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [#29-1, 29-2] shall be, and hereby is, **DENIED IN PART** and **GRANTED IN PART**; and it is

**FURTHER ORDERED** that Defendant's Motion for Summary Judgment [#28-1] shall be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that Defendant properly invoked FOIA Exemptions 2, 7(C), 7(D), and 7(F); and it is

**FURTHER ORDERED** that Defendant failed to describe with reasonable specificity those documents for which Exemptions 7(C) and 7(F) were invoked and whether non-exempt portions of those documents could be further segregated from exempt portions; and it is

**FURTHER ORDERED** that by no later than **August 1, 1998** (no enlargements of time shall be entertained except for compelling emergency), Defendant shall file a motion for summary judgment with a *Vaughn* index that explains with reasonable specificity whether any

non-exempt portions of documents withheld pursuant to Exemptions 7(C) and 7(F) may be segregated; and it is

FURTHER ORDERED that Defendant shall heed explicitly the instructions and admonitions contained in Subsection II.C of this Court's Memorandum Opinion; and it is

FURTHER ORDERED that Plaintiff shall file any cross motion for summary judgment and opposition to Defendant's motion and *Vaughn* index by no later than September 1, 1998.

SO ORDERED.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to:

Bobby E. Hazel
Reg. No. 41097-133
P.O. Box 3000
White Deer, PA 17887

David T. Smorodin
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

2