UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDOLFO ROMERO-CICLE,                )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )    Civil Action No. 05-2303 (RJL)
                                      )
U.S. DEPARTMENT OF JUSTICE,           )
                                      )
        Defendant.                    )
_____)

DEFENDANT'S REPLY TO PLAINTIFF'S "MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"

Preliminary Statement

Plaintiff commenced this action on November 29, 2005, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003), and the Privacy Act of 1974, 5 U.S.C. § 552a (2000), seeking access to certain records maintained by the Federal Bureau of Prisons (BOP) about himself.

On June 1, 2006, defendant moved for summary judgment on the grounds that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law.  On July 27, 2006, plaintiff filed his "Memorandum in Opposition to Defendant's Motion for Summary Judgment" [hereinafter Plaintiff's Opposition].

Defendant now submits this reply, as well as the Supplemental Declaration of Karen Summers, Paralegal Specialist, South Central Regional Office of BOP (SCRO), United States Department of Justice [hereinafter Supplemental Summers Declaration], filed herewith, which provides additional information in support of defendant's motion for summary judgment.  For the reasons set forth below, and the entire record herein, defendant respectfully submits that plaintiff's arguments

-2-

are without legal merit and that defendant's motion for summary
judgment should be granted, pursuant to Rule 56 of the Federal
Rules of Civil Procedure.

Argument

In his opposition, plaintiff appears to challenge three
things:  the adequacy of defendant's search for responsive
records; defendant's withholding of six pages in full; and
defendant's withholding of the identities of third-party inmates
named as plaintiff's separatees.  Defendant addresses each of
these below.

I.    BOP Conducted a Reasonable Search for
      Records in Response to Plaintiff's Request

Plaintiff's most vigorous challenge rests primarily on an
apparent misunderstanding of defendant's search for records
responsive to his FOIA request.  In his opposition, plaintiff
repeatedly claims that defendant's search was improperly limited
in scope; he even goes so far as to assert that "it was not until
he reviewed the Summers Declaration did he realize [BOP] had
given such a narrow construction to the FOIA request."  (Pl.'s
Opp'n at 4.)  In addition to being improbable, plaintiff's
assertion is at the very least untimely because he improperly
waited until litigation reached mid-stride to broaden the scope
of his initial request.  Because plaintiff failed to raise this
new claim during the administrative process, his claim should be
barred for his failure to exhaust his administrative remedies.
See Dettmann v. U.S. Dep't of Justice, 802 F.2d 1472, 1477 (D.C.
Cir. 1986) (dismissing portion of suit challenging failure to
process additional records when plaintiff did not dispute agency
action until after suit was filed).

-3-

In fact, defendant has already shown that from the outset of its response to plaintiff's request, it articulated clear parameters for its search for responsive records.  (See Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment [hereinafter Defendant's Memorandum], filed June 1, 2006, at 2-4.)  Upon receipt of plaintiff's initial request, BOP, in no uncertain terms, informed plaintiff that it was interpreting his request as one seeking documents maintained in his central file, and as such, would conduct a search of the "FOI Exempt" portion of his central file.  (See id. at 2-3.)  Then, in accordance with BOP policy, see 28 C.F.R. § 513.40 (2006), "Inmate Access to Inmate Central File," BOP advised plaintiff to seek local review of the remaining portion of his central file from institution staff at Federal Correction Institution (FCI) Forrest City.  (See Def.'s Mem. at 3.)

Additionally, BOP further told plaintiff that if, after completing a local review of his files, plaintiff "wish[ed] to acquire additional documents" not maintained in his central file, he could "submit a separate [Privacy Act] request describing the records sought" to BOP.  (Declaration of Karen Summers, Paralegal Specialist, SCRO, United States Department of Justice [hereinafter Summers Declaration], ¶ 5 & Ex. 2, filed June 1, 2006.)  Although defendant has shown that plaintiff already reviewed his central file locally on at least one occasion since receiving BOP's guidance (see Summers Decl. ¶ 7 n.5 & Ex. 3, filed June 1, 2006), BOP has not received any subsequent FOIA/Privacy Act requests from plaintiff seeking anything beyond what is maintained in his central file.  (See Supp. Summers Decl. ¶ 7.)

-4-

Furthermore, when BOP provided its final administrative response to plaintiff, it specifically reiterated its understanding of his request and reminded him to seek local review of the "disclosable" portions of his central file.  (See Def.'s Mem. at 3-4.)  Most notably, when plaintiff submitted his administrative appeal to the Office of Information and Privacy, the FOIA administrative appeal authority for the Department of Justice, he characterized his initial request as one seeking "a copy of all BOP's records maintained in his central file[.]" (Id. at 4, Summers Decl. ¶ 11 & Ex. 6, filed June, 1, 2006.)

Indeed, plaintiff did not at all raise any question about -- let alone object to -- defendant's search parameters until the recent filing of Plaintiff's Opposition, where he belatedly pressed defendant with actual details about investigative records he seeks that are not maintained in his central file.  (See Pl.'s Opp'n at 3, 7-8, 11.)  Self-servingly, he now argues that he has been seeking such investigatory records all along, and states that he is "aware of relevant documents at [Federal Prison Camp] FPC Pollock, Louisiana, because he received a disciplinary report there, and was sanctioned there for the alleged infraction of the rules of the institution.  The investigatory file is not a part of the central file, and is at Pollock, Louisiana" (emphasis added).  (Pl.'s Mem. in Opp'n at 11.)  However, even plaintiff's Complaint does not include such specificity with regard to the records sought; there plaintiff merely claims that he seeks access to records concerning BOP offense codes 201, 221, and 305, and that BOP "has the requested records as part of its agency records pertaining to [plaintiff], but refuses to disclose the records without just cause or excuse."  (Pl.'s Compl. at 3.)

-5-

As shown in Defendant's Memorandum, defendant has confirmed
that records concerning plaintiff and his violations of BOP codes
201, 221, and 305 are maintained in his central file.  (See
Def.'s Mem. at 5-6.)  Defendant has shown how plaintiff has
already been provided with partial access to records concerning
his violation of offense code 201 (those records are maintained
in the "FOI Exempt" portion of his central file and were
processed by BOP in response to his request) (see id.), and how
plaintiff has already been granted local review of records
concerning his violation of offense codes 221 and 305 that are
maintained in the disclosable portion of his central file.[1]  (See
Summers Decl. ¶ 7 n.5 & Ex.  3, filed June 1, 2006.)

Plaintiff thus incorrectly claims that BOP failed to provide
him with all of the records he requested because it limited its

_____

[1] As a courtesy to plaintiff, subsequent to its receipt of
Plaintiff's Opposition, defendant conducted a search for, and
located investigative records pertaining to his violation of code
221 at FPC Pollock.  (See Supp. Summers Decl. ¶ 5.)  These
records, however, are maintained in a system of records entitled
"Prison Security and Intelligence Record System, JUSTICE/BOP-001"
and consist of BOP's incident report, Discipline Hearing Officer
(DHO) report and the underlying Special Investigative Supervisor
(SIS) investigative records.  (See id. ¶¶ 5-6.)  Copies of the
incident report and DHO report are also maintained in the
discloseable portion of plaintiff's central file.  (See id.
¶¶ 4, 6.)  However, the underlying investigative records are not
included with plaintiff's central file because they are SIS
investigative records properly maintained in the JUSTICE/BOP-001
records system, which is a distinctly separate system from the
JUSTICE/BOP-005, Inmate Central Records system.  (See id.
¶¶ 5-6.)  Accordingly, because BOP's original search parameters
were limited to records maintained in plaintiff's central file,
the investigative records properly maintained only in the
JUSTICE/BOP-001 system are necessarily outside the scope of the
request at issue in this litigation.  Plaintiff may submit a new
and separate request to BOP's Central Office seeking access to
those specific records if he so chooses.

-6-

search to records at FCI Forrest City.  (See Pl.'s Opp'n at 2-4,
7-11.)   The Court of Appeals for the District of Columbia Circuit
has held that under the FOIA, an agency is required to undertake
"a good faith effort to conduct a search for the requested
records, using methods which can be reasonably expected to
produce the information requested."  Oglesby v. U.S. Dep't of the
Army, 920 F.2d 57, 68 (D.C. Cir. 1990).   The Summers Declaration,
filed on June 1, 2006, explains the parameters of BOP's search
for responsive records, methods used to locate those records,
(see Summers Decl. ¶¶ 6, 12-13, filed June 1, 2006), and provides
other relevant information to show that BOP's "search method was
reasonably calculated to uncover all relevant documents"
responsive to plaintiff's request.  Oglesby, 920 F.2d at 68
(declaring that although agency was not required to search
"every" record system, "[a]t the very least, [it] was required to
explain in its affidavit that no other record system was likely
to produce responsive documents"); see also, e.g., Ferranti v.
ATF, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) ("Affidavits that
include search methods, locations of specific files searched,
descriptions of searches of all files likely to contain
responsive documents, and names of agency personnel conducting
the search are considered presumptively sufficient."), summary
affirmance granted, No. 01-5451, 2002 WL 31189766, at *1 (D.C.
Cir. Oct. 2, 2002).

Defendant has shown that BOP conducted a good-faith effort
to locate records responsive to plaintiff's request.  BOP twice
informed plaintiff of its understanding of the scope of his
request, and thereby limited its search parameters to responsive
records in the "FOI Exempt" portion of his central file.  (See

-7-

Def.'s Mem. at 2-3.)  Then, BOP properly searched its Inmate
Central Records System for plaintiff's central file and located
it at FCI Forrest City.  (See id. at 2-3, 6.)  Once his central
file was located, BOP searched the "FOI Exempt" portion of it,
located twenty-nine pages of responsive records, and those
records were then forwarded to BOP's SCRO for processing under
the FOIA.  (See id. at 3, 6.)  Indeed, the Summers Declaration
clearly describes the records systems searched and thoroughly
details the efforts taken to locate all records responsive to
plaintiff's request.  See Landmark Legal Found. v. EPA, 272 F.
Supp. 2d 59, 66 (D.D.C. 2003) (finding a search affidavit to be
sufficient because it "identifi[ied] the affiants and their roles
in the agency, discuss[ed] how the FOIA request was disseminated
within their office and the scope of the search, which particular
files were searched, and the chronology of the search"); Garcia
v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 368 (S.D.N.Y.
2002) ("[T]o fulfill the adequate search requirement [of the
FOIA], the government should 'identify the searched files' and
'recite facts which enable the district court to satisfy itself
that all appropriate files have been searched.'" (quoting Church
of Scientology v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986))),
aff'd, 484 U.S. 9 (1987).

      Although plaintiff is dissatisfied that defendant limited
the scope of its search to documents maintained in plaintiff's
central file, Plaintiff's Opposition is the first time in which
plaintiff raised such an objection, despite many opportunities
during the administrative review process to do so.  Because
plaintiff waited until his recent filing to raise claims
regarding BOP's interpretation of his request, defendant

-8-

respectfully suggests that plaintiff not be afforded the
opportunity to broaden the scope of his request at this late
stage.  In sum, BOP informed plaintiff of its understanding of
the parameters of his request, conducted an adequate search for
records within the scope of plaintiff's request, and therefore,
defendant respectfully submits that it is entitled to summary
judgment on this issue as a matter of law.

> II.  BOP Properly Withheld Six Pages
>      of Third-Party Criminal Background
>      Information Pursuant to Exemption 7(C)

Plaintiff's second argument focuses on six pages withheld in
full by defendant pursuant to Exemption 7(C).[2]  (See Pl.'s Opp'n.
at 1-2, 4-5.)  Contrary to plaintiff's baseless assertions that
the documents withheld in full "are statements pertaining to the
[p]laintiff and purport to describe actions by the [p]laintiff"
and "were utilized by [BOP] in certain disciplinary proceedings
brought by [BOP] against the [p]laintiff" (id.), defendant has
already shown that those six withheld pages are nothing more than
third-party criminal background checks conducted by BOP of

---

[2] Although it does not appear to be an issue in this
litigation, plaintiff also seems confused about information
withheld in part pursuant to Exemption 7(C) on visitor
information forms.  Though he raises no legal arguments or
authority, plaintiff incoherently asserts that "BOP makes no
claim that . . . birthdates, addresses, social security numbers"
are "contained" on "visitor's forms". . . and "[c]ertainly that
information could be excised and the baklance [sic] of the forms
provided rather than to deny the entire form."  (Pl.'s Opp'n at
5.)  Defendant notes that it did indeed provide plaintiff with
partially redacted visitor information forms, wherein the only
information withheld consisted of the third-party private
citizens' social security numbers, driver's license information,
and history of contact with other federal inmates.  (See Def.'s
Mem. at 12-15.)

-9-

private citizens requesting visitation with plaintiff.  (See

Def.'s Mem. at 12-15.)  In short, plaintiff is simply mistaken in

his assertions regarding these records.  Therefore, because such

third-party records are appropriately withheld pursuant to

Exemption 7(C), and because plaintiff raises no reasonable or

substantive argument to counter defendant's action in this

regard, defendant respectfully submits that it is entitled to

summary judgment on this issue as a matter of law.  (Id.)

>    III.   BOP Properly Withheld Identifying Information
>           Concerning Third-Party Inmates Named as
>           Plaintiff's Separatees Pursuant to Exemption 7(F)

Finally, plaintiff argues that defendant improperly withheld

the "names and identifying information of third party inmates

named as plaintiff's separatees or who are referenced in an

internal BOP investigation of plaintiff" pursuant to Exemption

7(F).  (Pl.'s Opp'n at 5-6.)  In support of his argument,

plaintiff offers only his assertion that such information is a

matter of public interest because "[t]he manner and means of

operating penal facilities in the United States or under American

control elsewhere is a subject of a great deal of public

interest."  (Id. at 6.)  Plaintiff's argument is irrelevant,

however, as the successful application of Exemption 7(F) does not

hinge on whether there is enough "public interest" to outweigh

the personal safety of any individual.  (See Def.'s Mem. at 18.)

There is no "public interest" balancing under Exemption 7(F).

See Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 29 (D.D.C.

2002)("Unlike Exemption 7(C), which involves a balancing of

societal and individual privacy interests, 7(F) is an absolute

ban against certain information and, arguably, an even broader

-10-

protection than 7(C)."); <u>Shores v. FBI</u>, 185 F. Supp. 2d 77, 85 ("Although [Exemption 7(F)] applies equally to information subject to Exemption 7(C), it does <u>not</u> require any balancing test.")  Rather, defendant protected the identities of third-party inmates named as plaintiff's separatees pursuant to Exemption 7(F) after determining that disclosure of their identities would pose a threat to the physical safety of individuals.  (<u>See</u> Def.'s Mem. at 17-19.)  Plaintiff's Opposition is bereft of any substantive argument countering defendant's action in this regard, and thus defendant respectfully submits that it is entitled to summary judgment on this issue as a matter of law.

-11-

Conclusion

For the reasons set forth above, and based upon the entire record herein, defendant respectfully submits that its motion for summary judgment should be granted.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney

_____

RUDOLPH C. CONTRERAS
(DC Bar #434122)
Assistant United States Attorney

_____

Dated:  August 16, 2006        JENNIFER H. ASHWORTH
(DC Bar #475261)
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue, NW
Suite 11050
Washington, DC  20530-0001
(202) 616-5478